UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONNA R. M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:20-CV-542-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Donna M. ("Ms. M") seeks judicial review of the Social Security Commissioner's decision denying Ms. M's application for Disability Insurance Benefits ("DIB") under Title II of the Act. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **REMANDS** the decision of the Commissioner of the Social Security Administration ("SSA").

**OVERVIEW OF THE CASE**

Ms. M applied for DIB on March 22, 2017. In her application, she alleged a disability onset date of August 2, 2016. Ms. M's application was denied initially on August 18, 2017, and upon reconsideration on February 22, 2018. Following a hearing on March 27, 2019, the Administrative Law Judge ("ALJ") issued a decision on May 13,

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

2019, which affirmed the Social Security Administration's denial of benefits. The ALJ found that Ms. M suffers from the severe impairments of status post right knee partial replacement with conversion, degeneration of the lumbar spine, fibromyalgia, and osteoarthritis. The ALJ found that none of Ms. M's severe impairments, nor any combination of her impairments, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, the ALJ found that Ms. M has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with certain additional limitations. Ms. M has past relevant work as a hospital admitting clerk and phlebotomist. In view of Ms. M's RFC, the ALJ found that Ms. M is capable of performing her past relevant work as a hospital admitting clerk, both as actually performed and as generally performed. Based upon these findings, the ALJ denied Ms. M's claim for DIB.

I.  **DISABILITY STANDARD**

In order to qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the

Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 416.920. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## II.   STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in

the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

### III. ANALYSIS

Ms. M argues that the ALJ erred in evaluating the opinion of the consultative examiner, failed to consider her need for a cane for standing as well as walking, and failed to account for her reduced grip strength in the RFC.

First, Ms. M asserts that the ALJ erred by "failing to provide a sufficient explanation as to why he favored the assessment of non-examining state agency consultants over the opinion of the psychological consultative examiner." [DE 15 at 9]. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Yet "an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Nevertheless, "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled … can be

4

expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Id.*

Consultative examiner Dr. R. Gupta, M.D., completed an examination on July 6, 2017. [DE 11 at 419]. Dr. Gupta noted spinous and paraspinal tenderness in the lumbar region and limited range of motion with wearing a back brace. [*Id.* at 421]. He found Ms. M to have decreased grip strength at 4/5 bilaterally, but with "good fine finger manipulative abilities." [*Id.*]. Dr. Gupta noted pain and limited range of motion in her right knee with wearing a knee brace, along with 4/5 strength in all lower major muscle groups. [*Id.*]. He stated that she has an antalgic gait using a cane, that she is able to get on and off the examination table with difficulty but without assistance, and that she is able to stand from a sitting position with difficulty. [*Id.*]. Under the "medical source statement" section, Dr. Gupta stated that Ms. M "is unable to do work related activities such as sitting, standing, walking, lifting, carrying and handling objects for any length of time." [*Id.* at 422]. The ALJ gave Dr. Gupta's opinion "some weight." [*Id.* at 22]. The ALJ found that his opinion does not give definitive limitations which can be applied to a vocational consideration. [*Id.*].

The ALJ also discussed Ms. M's self-described limitations in standing and walking, and found that while Ms. M alleged she could only stand for thirty minutes and then would need to rest for thirty minutes, she also stated that she was not on any medication for her lower back or right knee pain. [DE 11 at 21-22].

The state agency consultants provided an RFC that found Ms. M was capable of light work with additional limitation, including the need for a cane to "walk at all times

but not to stand," but she can lift with the non-cane bearing arm. [*Id.* at 91, 101-02]. The ALJ provided these opinions "some weight," finding that additional evidence at the hearing, along with Ms. M's presentation at the hearing, warranted additional limitations. [*Id.* at 17]. Ms. M asserts that the ALJ improperly relied more on the state agency consultants' opinion than on Dr. Gupta's opinions, despite giving both opinions some weight. Specifically, Ms. M argues that the ALJ "made no effort to incorporate any element of Dr. Gupta's opinion, which stated that Plaintiff was unable to do any work-related exertional activities for any length of time." [DE 15 at 10-11].

Opinions on whether a claimant is "disabled" or "unable to work" are administrative findings that are dispositive of a case, and therefore are opinions on issues reserved to the Commissioner. 20 C.F.R. §404.1527(d)(1). Such opinions are not medical opinions, and the ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* Ms. M supports her argument by asserting that Dr. Gupta's statement is not a summary statement of disability, but that it is a specific physician finding that Ms. M could not perform activities such as sitting, standing, walking, lifting, carrying, and handling objects for any length of time. This vague statement does not provide any specifics as to what limitations should be incorporated into the RFC, and instead seems to indicate that Ms. M can never stand, walk, lift, carry, or handle objects. Such a statement is illogical. Further, Ms. M contradicts her own argument by stating that Dr. Gupta's statement, "though perhaps vague, clearly would preclude any sort of work." [DE 15 at 11]. Dr. Gupta's statement that Ms. M could not perform activities "for any length of time" is vague and

6

contradicts Dr. Gupta's own examination which showed "good fine finger manipulative abilities, including the ability to button, zip, and pick of coins," [DE 11 at 421], 4/5 strength in all upper and lower major muscle groups, an antalgic gait while using a cane, and the ability to stand from a sitting position with difficulty. [*Id.*]. These findings show that Ms. M could sit, stand, walk, and handle for at least some length of time, despite Dr. Gupta's medical source statement to the contrary.

Ms. M further asserts that despite giving "some weight" to both the state agency opinions and Dr. Gupta's opinion, the ALJ adopted more limitations from the state agency consultants and therefore gave "far greater weight to the non-examining sources here, and without any legitimate explanation." [DE 15 at 12]. Ms. M only provides one paragraph in support of her argument, wherein she asserts that the ALJ made no effort to consider the consistency of Dr. Gupta's opinion with the limitations he observed during the examination. [*Id.*]. However, she does not provide any argument as to which of Dr. Gupta's opinions could or should have been translated into limitations in the RFC. Ms. M also implies that Dr. Gupta meant to say that Ms. M could not perform the functions described for "any prolonged period." [*Id.* at 11]. However, the word prolonged is not in Dr. Gupta's opinion, and it is mere speculation to assume that Dr. Gupta meant she could not perform those actions for any prolonged period of time, when he actually opined that Ms. M could not perform the functions described for "any length of time." [DE 11 at 422].

Moreover, the ALJ did not adopt limitations from the state agency consultants while rejecting the limitations from Dr. Gupta's opinion. The state agency consultants

7

opined that Ms. M was capable of light exertional work, yet the ALJ limited her to sedentary work with the option to alternate positions every 25 minutes. [*Id.* at 19]. The ALJ also found that Ms. M required a cane for ambulation, and that she could only occasionally climb stairs and ramps, balance, stoop, and kneel, and that she could never climb ladders, ropes, or scaffolds. [*Id.*]. The ALJ did not, as Ms. M argues, ignore Dr. Gupta's opinion in favor of the state agency opinions. The ALJ did not adopt the state agency opinions while failing to consider Dr. Gupta's opinion. Dr. Gupta did not provide any specific limitations related to Ms. M's ability to sit, stand, walk, lift, or carry for the ALJ to adopt. The ALJ properly supported his reasoning for giving Dr. Gupta's opinion some weight based on the vague medical statement he provided.

Ms. M also fails to explain how Dr. Gupta's opinion is consistent with either Dr. Gupta's observed limitations or other treatment notes in the record. She has failed to explain how Dr. Gupta's findings translate to further restrictions in the RFC with one exception. The ALJ's failure to consider Dr. Gupta's objective findings regarding Ms. M's ability to handle objects will be discussed later in this opinion. However, the ALJ did not err in his explanation of why he provided Dr. Gupta's vague medical opinion statement "some weight."

Ms. M also argues that the ALJ erred in failing to account for her need for a cane while standing as well as walking. Ms. M relies on multiple treatment notes that show an antalgic gait, even while using her cane. [*Id.* at 404, 421, 475]. Ms. M argues that evidence of antalgic gait with use of her cane, evidence of difficulty getting on and off the exam table, and difficulty standing from a seated position is uncontroverted

evidence that she requires a cane for standing as well as walking. [DE 15 at 13-14]. This is illogical. Ms. M did not point to any medical evidence in the record that indicated she required a cane for standing. On the contrary, the evidence only indicates the use of a cane for walking. Ms. M has not pointed to a single piece of medical evidence that shows she required a cane for standing. Even the treatment notes documenting her difficulty in getting on and off the exam table and switching from sitting to standing give no indication that Ms. M required a cane to complete the tasks. [DE 11 at 422].

Ms. M further argues that the ALJ had no basis for rejecting the requirement of using a cane with standing, [DE 15 at 14]; however, Ms. M has not shown that she requires the use of a cane while standing that the ALJ rejected. The ALJ did not err in relying on the evidence in the medical record, which indicates Ms. M required a cane for ambulation with no mention of the need for a cane while standing. Both Dr. Gupta's opinions and the state agency consultant opinions indicate Ms. M only required a cane for ambulation. [DE 11 at 88, 91, 107, 422]. Ms. M also repeatedly and falsely asserts that the Dr. Gupta noted difficulty in getting up from a seated position and difficulty getting on and off the examination table despite using her cane. [DE 13-15]. However, Dr. Gupta makes no indication that she used her cane for anything other than ambulation. Moreover, Ms. M testified that she uses the cane for "mostly walking" and not necessarily for standing. [DE 11 at 58]. The ALJ did not err in relying on the medical evidence available in finding Ms. M only required the use of a cane for ambulation.

Finally, Ms. M asserts that the ALJ erred in failing to account for her reduced grip strength in the RFC assessment. Ms. M. asserts that the ALJ failed to account for

9

Dr. Gupta's finding of reduced grip strength (4/5) in his July 2017 consultative examination, along with the objective dynamometer testing he performed. [DE 11 at 421]. Dr. Gupta noted reduced grip strength at 4/5 as well as documented dynamometer testing showing Ms. M could generate 16.4 kg of force with her right hand and 10.6 kg of force with her left hand. [*Id.*]. While the ALJ noted that Dr. Gupta specifically found that Ms. M had "good fine finger manipulative abilities, including the ability to button zip, and pick up coins," [*Id.* at 20, 421], the Seventh Circuit has held that normal fingering abilities is not inconsistent with the need for handling limitations due to reduced grip strength. *Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014). Normal fingering abilities does not necessarily indicate normal handling abilities. *Id.* The ALJ also noted a further instance of normal motor testing and one other instance of normal grip when listing the medical evidence in the record. [DE 11 at 19-20 (citing *id.* at 357, 404)]. The one notation of normal grip strength was in April 2017, while Dr. Gupta's consultative examination happened three months later, in July 2017. [*Id.* at 405, 419].

Dr. Gupta recorded that Ms. M was able to generate 16.4 kg (36.16 pounds) of force with her right hand and 10.4 kg (22.93 pounds) of force in her left hand. According to a widely used study, the average grip strength for women aged 50-54 is 65.8 pounds in the right hand and 57.3 pounds in the left hand. Virgil Mathiowetz et al., "Grip and Pinch Strength: Normative Data for Adults," 66 *Archives of Physical Medicine and Rehabilitation* 69, 71 (1985), https://www.researchgate.net/publication/19190602_Grip_and_Pinch_Strength_Normative_data_for_adults (visited December 8, 2021). A

similar study from 2015 indicates that the average woman in her fifties can generate 27.1 kg (59.75 pounds) of force in her right hand, and 24.4 kg (53.79 pounds) of force in her left hand. Amy M. Yorke, et al., "Grip Strength Values Stratified by Age, Gender, and Chronic Disease Status in Adults Aged 50 Years and Older," 38 *Journal of Geriatric Physical Therapy* 115-121 (2015), https://journals.lwww.com/jgpt/Fulltext/2015/07000/Grip_Strength_Values-Stratified_by_Age,_Gender,.2.aspx (last visited December 9, 2021). The objective dynamometer testing done by Dr. Gupta shows that Ms. M's grip strength is significantly below the normal range for women of her age.

While Dr. Gupta found that Ms. M had the ability to perform fine finger manipulations, he also found reduced grip strength, which is associated with handling and not fingering. Finger manipulation involves working primarily with the fingers, and it is "needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion." SSR 85-15:2. Handling, which encompasses seizing, holding, grasping, turning, or working primarily with the whole hand or hands, "are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do." *Id.* The ALJ did not discuss Ms. M's documented reduced grip strength anywhere in the decision, nor did he explain his reasoning for providing no handling limitations in the RFC, which is in error.

The Commissioner asserts that the ALJ properly relied on multiple other instances of normal strength and motor skills. However, the ALJ does not provide this explanation in any discussion of Ms. M's ability to handle objects or in the analysis of

11

Dr. Gupta's opinion. More problematically, the medical records that the Commissioner cites to do not all indicate normal grip strength. The only indication of normal grip strength is in a treatment note from April 2017, which stated that her bilateral hand grasp was 5/5. (*Id.* at 404). All other treatment notes indicated normal motor functions or a lack of motor weakness, but they do not specifically note any testing for grip strength. (*Id.* at 357, 555). Motor functions can apply to any number of muscle groups in either extremities. *See* https://www.physio-pedia.com/Motor_Assessment_Scale (last visited December 9, 2021). Without specifically addressing grip strength, the ALJ cannot conclude that a general statement regarding motor function means the clinician actually measured Ms. M's grip strength.

  The ALJ also did not address these treatment notes in his discussion of Ms. M's ability to handle or in his analysis of Dr. Gupta's opinion. The ALJ dismissed Dr. Gupta's medical source statement, but he did not discuss or consider the objective dynamometer testing with regard to Ms. M's reduced grip strength anywhere in the decision. Without discussion of Dr. Gupta's objective findings, the Court cannot provide meaningful review, as it is unclear how the ALJ determined that Ms. M did not require handling limitations in the RFC. The ALJ is required to build a logical bridge from the medical evidence to that conclusion, which he failed to do here. *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

  Ms. M. makes other arguments regarding the state agency opinions, but since the Court is remanding based on errors in analyzing Ms. M's ability to handle objects, the Court need not discuss those other arguments at this time. The ALJ will have the

opportunity to fully discuss and reevaluate the rest of Ms. M's allegations on remand. This is not to say that there are no other errors in the ALJ decision, but the Court need not discuss them when errors are already present in the ALJ's analysis and discussion of her subjective symptoms.

### V. CONCLUSION

For the reasons stated above, the ALJ failed to support his decision finding Ms. M. is not disabled with substantial evidence. *See Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012); *Scott,* 297 F.3d at 595. Accordingly, the Commissioner's decision is **REMANDED** for further consideration consistent with this opinion.

**SO ORDERED** this 13th day of December 2021.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge